IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DORIS SMITH DINKINS, PERSONAL REPRESENTATIVE OF THE ESTATE OF RASHOD SMITH | ) ) ) ) | Case No.: 2:21-cv-3515-DCN-MGB |
| Plaintiff, | ) ) ) | **AMENDED COMPLAINT** (Jury Trial Demanded) |
| v. | ) ) | |
| JORDAN WILLIAMSON, in his individual capacity; MICHAEL THOMPSON, in his individual capacity; ROBERT BECKER, in his individual capacity; RUSSELL GOTTULA, in his individual capacity; STEVEN WORLEY, in his individual capacity; SAMANTHA STROUD, in her individual capacity; ASHLEY BETTS, in her individual capacity; and BERKELEY COUNTY SHERIFF'S OFFICE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Doris Smith Dinkins, as Personal Representative of the Estate of Rashod Smith,

complaining of the above-named Defendants, alleges as follows:

**JURISDICTION AND VENUE**

1.    Decedent Rashod Smith ("Rashod" or "Decedent"), at all times herein, was a

citizen and resident of Berkeley County in the State of South Carolina.  Plaintiff Doris Smith

Dinkins is the duly appointed Personal Representative of the Decedent's Estate which is being

probated in Berkeley County.  Plaintiff's certificate of appointment is attached hereto as Exhibit

No. 1.

1

2.      Plaintiff brings this wrongful death action on behalf of Decedent's statutory beneficiaries pursuant to Section 15-51-10 of the South Carolina Code and brings this survival action on behalf of the Decedent's Estate pursuant to Section 15-5-90 of the South Carolina Code.

3.      Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of South Carolina.

4.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Jordan Williamson was employed by the Berkeley County Sheriff's Office (a state entity organized and created under the laws of the State of South Carolina) as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

5.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Michael Thompson was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

6.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Robert Becker was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

7.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Russell Gottula was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

8.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Steven Worley was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

9.      Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Samantha Stroud was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

10.     Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Ashley Betts was employed by the Berkeley County Sheriff's Office as a Sheriff's deputy and who was at all times alleged herein acting under the color of state law.

11.     Upon information and belief, the Berkeley County Sheriff's Office is a state entity organized and created pursuant to the laws of the State of South Carolina.  The Berkeley County Sheriff's Office is responsible for implementing and overseeing the policies, practices and customs of the Berkeley County Sheriff's Office as well as for the hiring, training, supervision, controlling and disciplining of its deputies and other employees, including Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts.

12.     Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were employees, agents, and/or servants of the Berkeley County Sheriff's Office.

13.    Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts are residents of the State of South Carolina residing in Berkeley County.

14.    Defendant Berkeley County Sheriff's Office informed Plaintiff that it consents to this Court's jurisdiction over all state law causes of action alleged against it in this action.

15.    Venue is proper in the United States District Court for the District of South Carolina under 28 U.S.C. § 1391 because:

    a.    As set forth herein, the events or omissions giving rise to this action occurred in the District of South Carolina within the meaning of 28 U.S.C. § 1391(b)(2);

    b.    Defendants reside in the District of South Carolina within the meaning of 28 U.S.C. § 1391(c)(2); and

    c.    Defendants are subject to the Court's personal jurisdiction with respect to this action.

16.    This Court has concurrent subject matter jurisdiction over all claims alleged and that were removed to this Court, has personal jurisdiction over all Defendants, and venue is proper in the Charleston Division as the events giving rise to this litigation occurred there.

17.    Venue is proper in this division under Local Civil Rule 3.01(A)(1) as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Berkeley County and within the Charleston Division of the United States District Court for the District of South Carolina

18.    Trial by jury is demanded pursuant to Federal Rule of Civil Procedure 38.

## FACTUAL BACKGROUND

19.     On the evening of October 14, 2018, Rashod Smith attended a family wedding with his 19-month-old son.  After leaving the celebration, they returned to their home in Moncks Corner.

20.     Once home, Rashod changed his son's diaper and got him ready for bed.  Rashod then tucked his son into the toddler bed located in the bedroom used by him and his wife.

21.     Shortly after his son fell asleep, Rashod, who was not feeling well at the time, went to sleep in the same bedroom.

22.     Rashod and his son were the only two people in the home at the time.  Rashod's wife was working that evening and had not attended the wedding.

23.     On information and belief, while Rashod and his son were sleeping, an individual identifying himself as "Chris" called 911 to report a "disturbance" at Rashod's house.

24.     Such false reports of emergencies to 911 call centers are commonly known as "swatting" calls.  A "swatting call" is a false 911 call made to police in which a false report of a violent crime is made to elicit a police Special Weapons and Tactics ("SWAT") team or other heavy police response to the physical address of a targeted individual, his or her family members, or place of employment.

25.     In response to the 911 call, the Berkeley County Sheriff's Office sent more than a half dozen deputies to Rashod's home, including Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts (collectively, "Sheriff's Deputies").

26.     Yet, when the Sheriff's Deputies arrived at Rashod's home, there were no noises of any kind coming from inside the house substantiating a disturbance or otherwise indicating any activity at the home, lawful or unlawful, as Rashod and his son were sleeping inside.

27.    Indeed, when the Sheriff's Deputies began arriving at the home, they did not immediately enter or take any steps to determine the veracity of the allegations from the anonymous 911 caller.   Rather, on information and belief, they waited down the street for approximately thirty minutes planning their assault on Rashod.

28.    Thus, a full thirty minutes had elapsed after the 911 call was received before Defendants Williamson, Thompson, Becker, Gottula, and Worley opened the front storm door and entered Rashod's home.

29.    At no time did Rashod consent to any law enforcement officers entering his home.

30.    At no time, on information and belief, did Defendants possess or serve a search warrant to enter Rashod's home.

31.    At no time, on information and belief, did Defendants possess or serve an arrest warrant on Rashod Smith.

32.    At no time did the observable conditions at Rashod's home present any need for governmental interference or intrusion into his private residence.

33.    At all times relevant hereto all Americans including Rashod had a right to be secure in their persons, houses, papers and effects.

34.    Further, at all times relevant hereto all Americans including Rashod had a right to be free from unnecessary, unlawful governmental interference and further had a right to be free from the use of excessive force.

35.    Upon entering the home, on information and belief, Defendants heard no noises and observed no movement from anyone inside, including no sounds or movements indicating any disturbance or distress.   Rather, the house was quiet and still.

36.    At all times relevant hereto Defendants violated generally accepted policing practices and Rashod's known constitutional rights by among other things failing to consider whether the nature and quality of the intrusion into Rashod's home was justified considering the minimal if any governmental interests involved in the police activity.

37.    Once inside, Defendants Williamson, Thompson, Becker, Gottula, and Worley proceeded to clear the house, walking from room to room in search of Rashod.

38.    When Williamson, Thompson, Becker, Gottula, and Worley approached the back bedroom, on information and belief, they saw Rashod sleeping peacefully in the comfort of his own bed while his 19-month-old son slept quietly in an adjacent toddler bed.

39.    Despite having actual knowledge the 911 call was false and that no dangers inside the home were then and there present, and despite witnessing a father and son sleeping peacefully in their bedroom, on information and belief Defendants Williamson, Thompson, Becker, Gottula, and Worley rushed in with weapons drawn, screamed at Rashod, pulled the blanket off of him, jumped on top of him, and pinned him down to the bed face up while simultaneously demanding that he turn over face down.

40.    Rashod awoke to this immensely chaotic scene of five strangers invading his bedroom, fearing for his son's life and his own life.

41.    Defendant Betts thereafter entered Rashod's home and proceeded to the bedroom.

42.    Indeed, during the chaos, Rashod watched as deputies grabbed his son from the toddler bed and handed him to Defendant Betts who took him out of the bedroom screaming in terror, further horrifying Rashod.

43.    On information and belief, Defendant Williamson jumped on top of Rashod and punched him in the face.

7

44.     While Rashod was pinned down on his bed by the other deputies, on information and belief Defendant Becker used his department-issued Taser to electrically shock Rashod, first by applying a drive stun to his body followed by shooting two Taser darts into his body.  Becker then picked up a baton and struck Rashod's leg several times.

45.     While Rashod was pinned down on his bed by the other deputies, on information and belief Defendant Thompson punched Rashod three times in the face using his fist, then hit him several more times using elbow strikes.

46.     While Rashod was pinned down on his bed by the other deputies, on information and belief Defendant Gottula used his department-issued Taser to shock Rashod's body a total of nine times.

47.     While other deputies were beating Rashod, on information and belief, Defendant Worley wrapped his hand on Rashod's neck and squeezed hard, then pinned down his legs and torso.

48.     After Rashod pleaded for Defendants to stop their brutal assault, upon information and belief, Defendant Stroud, who earlier had been waiting by the back door of the house listening to screaming, went to the back bedroom and assisted the other defendants in continuing to strike and pin Rashod down.  She then handcuffed Rashod.

49.     Defendants thereafter forcibly removed Rashod Smith from his home.

50.     After this brutal assault, Defendant Worley commented, "I had Smith's blood all over my arms and hands."

51.     As a result of the brutal assault and repeated Tasing by the Sheriff's Deputies, Rashod suffered ongoing dizziness, persistent headaches, and repeated neurological seizures, ultimately resulting in his death on February 3, 2020.

**FOR A FIRST CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Excessive Force in Violation of Decedent's Fourth Amendment Rights Against Defendants Williamson, Thompson, Becker, Gottula, Worley and Stroud)**

52.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

53.     At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud were deputies with the Berkeley County Sheriff's Office and acted under the color of state law.  This cause of action is brought against them in their respective individual capacities.

54.     At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud knew or should have known that an individual asleep in his own bed at night inside of his home could not pose a substantial and immediate risk of serious physical injuries to anyone or present any need for governmental intrusion into Decedent's private affairs.

55.      Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud knew or should have known that awakening an individual asleep inside his home at night with a shocking and violent assault would provoke an instantaneous and reflexive reaction from any reasonable person—man, woman, or child—including from Decedent that no reasonable law enforcement officer would view as resistance.

56.     Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud knew or should have known that assaulting Decedent in the face and body with their hands, elbows, and/or a baton posed a substantial and immediate risk of serious injury to Decedent.

57.     Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud knew or should have known that by pinning down Decedent to the bed and/or otherwise restricting his

ability to move while violent blows were being delivered by them exacerbated the substantial and immediate risk of serious injury to him.

58.    Defendants Becker and Gottula knew or should have known that delivering repeated electrical shocks to Decedent with their Tasers while he was being pinned down to his bed served no law enforcement purpose and posed a substantial and immediate risk of serious injury to Decedent.

59.    Defendants Becker and Gottula knew or should have known that delivering repeated electrical shocks to Decedent who at the time was known to Defendants to have a history of seizures, posed a substantial and immediate risk of serious injury to Decedent.

60.    Decedent is further informed and believes no reasonable law enforcement officer would have used any force against Decedent under the circumstances then and there prevailing, let alone a series of hand strikes, elbow strikes, body blows, and electrical shocks.

61.    As a direct and proximate result of Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud's conduct, Decedent was deprived of rights, privileges and immunities safeguarded by the Fourth Amendment of the U.S. Constitution, particularly his right to be free from the use of excessive and unreasonable force.

62.    Upon information and belief, the excessive and deadly force that Decedent was subjected to was employed by Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud in deliberate indifference to Decedent's life and without any reasonable necessity to use any force, much less the excessive and deadly force that was employed without legal justification.

63.    As a direct and proximate result of Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud's violations of Decedent's civil rights including the unlawful use of excessive and unreasonable force, Decedent suffered damages, including constitutional injuries,

physical injuries, and tremendous and irreparable emotional and mental harm, and later neurological seizures and death.   Plaintiff is entitled to recover actual, and punitive damages as determined by a jury.

## FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 – Unlawful Entry/Search in Violation of Decedent's Fourth Amendment Rights Against All Individual Defendants)

64.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

65.    At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were deputies with the Berkeley County Sheriff's Office and acted under the color of state law and exercised power possessed by virtue of state law as commission law enforcement officers.   This cause of action is brought against them in their respective individual capacities.

66.    Defendants' conduct as more fully set forth above deprived Decedent of his rights, privileges or immunities secured by the Fourth Amendment to the Constitution of the United States.

67.    Particularly, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts conduct deprived Decedent of his Fourth Amendment right guaranteeing all citizens the right "to be secure in their houses . . . against unreasonable . . . searches."

68.    On information and belief, Defendants conducted an unlawful and unreasonable search of Decedent's home wherein Defendants, without a lawful arrest warrant or search warrant, consent, or any exigency, entered the sanctity of Decedent's home and continued to remain there after searching the entire home and finding a father and his 19-month-old son sleeping in the back bedroom.

69.     Defendants' unreasonable search of Decedent's home and remaining there after finding no exigency inside was objectively unreasonable in light of the facts and circumstances then and there prevailing.

70.     As a direct and proximate result of Defendants' violations of Decedent's constitutional rights, Decedent suffered damages, including constitutional injuries, physical injuries, and tremendous and irreparable emotional and mental harm, and neurological seizures and death.   Plaintiff is entitled to recover actual, and punitive damages as determined by a jury

**FOR A THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Unlawful Seizure in Violation of Decedent's Fourth Amendment Rights Against All Individual Defendants)**

71.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

72.     At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were deputies with the Berkeley County Sheriff's Office and acted under the color of state law and exercised power possessed by virtue of state law as commissioned law enforcement officers.   This cause of action is brought against them in their respective individual capacities.

73.     Defendants' conduct as more fully set forth above deprived Decedent of his rights, privileges or immunities secured by the Fourth Amendment to the Constitution of the United States.

74.     Particularly, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts conduct deprived Decedent of his Fourth Amendment right guaranteeing all citizens the right "to be secure in their houses . . . against unreasonable . . . seizures."

75. Defendants' seizure of Decedent inside his home was objectively unreasonable in light of the facts and circumstances then and there prevailing.

76. As a direct and proximate result of Defendants' unreasonable seizure of Decedent, he suffered damages, including constitutional injuries, physical injuries, and tremendous and irreparable emotional and mental harm, and later neurological seizures and death.  Plaintiff is entitled to recover actual, and punitive damages as determined by a jury

### FOR A FOURTH CAUSE OF ACTION
**(42 U.S.C. § 1983 – Violation of Decedent's Fourth Amendment Rights
Against Defendant Ashley Betts – Individual Supervisory Liability)**

77. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

78. During all relevant times herein, Defendant Betts was acting under the color of state law, customs, practices, usage or policy as the ranking supervisor and sergeant at Decedent's home on behalf of the Berkeley County Sheriff's Office.  This cause of action is brought against Betts in her individual capacity.

79. As the highest-ranking law enforcement officer present at the scene, and pursuant to Berkeley County Sheriff's Office policies, Defendant Betts had command authority over and was responsible for supervising all Sheriff's deputies present at the scene of Decedent's home, including Defendants Worley, Williamson, Stroud, Becker, Thompson, and Gottula ("subordinate deputies").

80. Pursuant to Berkeley County Sheriff' Office policies, supervisory personnel, such as Defendants Betts, are "accountable for the activities of employees under their immediate control," which included the above-named subordinate deputies.  Further, those policies state that "Sergeants must enforce rules and regulations to ensure compliance with agency policy."

81.     On information and belief, Defendant Betts's position and tenure at the Berkeley County Sheriff's Office gave her knowledge of the deficient job performance and training received by junior sheriff's deputies, including that received by her subordinate deputies, such that junior deputies under her supervision had a greater propensity for violating the constitutional rights of Berkeley County citizens.  On information and belief, as a sergeant, Defendant Betts had actual and/or constructive knowledge of prior Fourth Amendment violations stemming from improper training and/or supervision of deputies, including her subordinate deputies.

82.     During all relevant times herein, Defendant Betts was actively involved in and contemporaneously aware of the unlawful entry into Decedent's home, the unlawful seizure of Decedent, and the brutal assault on Decedent.

83.     On information and belief, Defendant Betts met her subordinate deputies outside of Decedent's home and together with them approached the threshold of the home.  Defendant Betts remained outside while she watched her subordinate deputies unlawfully enter Decedent's home knowing they lacked a proper warrant to enter and knowing there were no exigent circumstances justifying their entry.

84.     On information and belief, Defendant Betts further heard and watched as her subordinate deputies moved through the interior of Decedent's home.

85.     On information and belief, Defendant Betts then entered the Decedent's home and joined Defendants Worley, Thompson, Gottula, Williamson, and Becker inside.  Defendant Betts watched and tacitly authorized her subordinate deputies to make entry into the back bedroom where Decedent and his son were sleeping.  Betts then joined her subordinate deputies inside the bedroom and heard and witnessed their violent assault of Decedent.

86.     Accordingly, Defendant Betts possessed actual knowledge of the conduct engaged in by her subordinate deputies as it was occurring, and that such conduct was done in a reckless manner and with complete disregard for the safety and rights of Decedent and his 19-month-old son.

87.     As the ranking law enforcement officer at the scene, Defendant Betts had a duty to supervise all other deputies present, a duty that included among other things, to prevent her subordinate deputies from unlawfully entering Decedent's home, to order their exit from Decedent's home upon finding no legal justification to remain inside, and to order her subordinate deputies to cease their violent assault on Decedent when she first became aware of it, all of which she failed to do.

88.     Defendant Betts was grossly negligent in her supervision of her subordinate deputies on the scene despite actual and constructive knowledge that the subordinate deputies were violating Decedent's constitutional rights as described herein.

89.     Defendant Betts knew or should have known that her supervision of the subordinate deputies was inadequate and created the likelihood for the harm of Decedent, as she witnessed their conduct throughout this incident, thus demonstrating her deliberate indifference to the Decedent's constitutional rights.  Indeed, Defendant Betts had several opportunities to intervene in order to prevent this unlawful conduct from occurring, but voluntarily declined to do so.

90.     As a direct and proximate result of the knowing, willful and grossly negligent acts and omissions by Defendant Betts in supervising her subordinate deputies, Decedent suffered damages, including constitutional injuries, physical injuries, and tremendous and irreparable emotional and mental harm, and later neurological seizures and death.   Plaintiff is entitled to recover nominal, actual, and punitive damages.

## FOR A FIFTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Violation of Decedent's Fourth Amendment Rights Against All Individual Defendants – Bystander Liability)

91.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

92.    At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were deputies with the Berkeley County Sheriff's Office and acted under the color of state law and exercised power possessed by virtue of state law as commission law enforcement officers.   This cause of action is brought against them in their respective individual capacities.

93.    During all relevant times herein, on information and belief, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were present during the unlawful entry into Decedent's home, the unlawful seizure of Decedent, and/or the brutal assault on Decedent.

94.    On information and belief, each of these Sheriff's Deputies had knowledge of and witnessed the conduct of their fellow officers in violating Decedent's constitutional rights through application of excessive force.

95.    As sworn law enforcement officers at the scene, each of these Defendants had a duty and obligation to prevent their fellow deputies from unlawfully entering Decedent's home, to order them to exit from Decedent's home upon finding no exigent circumstances inside, and to order them to cease their use of excessive force on Decedent as soon as it began.

96.    Each of these Sheriff's Deputies had the power to prevent a fellow deputy's illegal acts, regardless of rank, as no Berkeley County Sheriff's Office employee is entitled to violate the law or is otherwise required to obey unlawful orders.

97.     On information and belief, Defendant Williamson witnessed and had knowledge of the excessive force used on Decedent by Defendants Thompson, Becker, Gottula, Worley, and Stroud; he had a reasonable opportunity inside of Decedent's bedroom to prevent such use of excessive force by his fellow officers, yet he chose not to act.  As a direct and proximate result of his failure to intervene, his fellow officers continued to violate Decedent's constitutional rights.

98.     On information and belief, Defendant Thompson witnessed and had knowledge of the unlawful entry, unlawful seizure, and excessive force used on Decedent by Defendants Williamson, Becker, Gottula, Worley, and Stroud; he had a reasonable opportunity inside of Decedent's bedroom to prevent such unlawful conduct by his fellow officers, yet he chose not to act.  As a direct and proximate result of his failure to intervene, his fellow officers continued to violate Decedent's constitutional rights.

99.     On information and belief, Defendant Becker witnessed and had knowledge of the unlawful entry, unlawful seizure, and excessive force used on Decedent by Defendants Williamson, Thompson, Gottula, Worley, and Stroud; he had a reasonable opportunity inside of Decedent's bedroom to prevent such unlawful conduct by his fellow officers, yet he chose not to act.  As a direct and proximate result of his failure to intervene, his fellow officers continued to violate Decedent's constitutional rights.

100.     On information and belief, Defendant Gottula witnessed and had knowledge the unlawful entry, unlawful seizure, and excessive force used on Decedent by Defendants Williamson, Thompson, Becker, Worley, and Stroud; he had a reasonable opportunity inside of Decedent's bedroom to prevent such unlawful conduct by his fellow officers, yet he chose not to act.  As a direct and proximate result of his failure to intervene, his fellow officers continued to violate Decedent's constitutional rights.

101.    On information and belief, Defendant Worley witnessed and had knowledge of the unlawful entry, unlawful seizure, and excessive force used on Decedent by Defendants Williamson, Thompson, Becker, Gottula, and Stroud; he had a reasonable opportunity inside of Decedent's bedroom to prevent such unlawful conduct by his fellow officers, yet he chose not to act.  As a direct and proximate result of his failure to intervene, his fellow officers continued to violate Decedent's constitutional rights.

102.    On information and belief, Defendant Stroud witnessed and had knowledge of the unlawful entry, unlawful seizure, and excessive force used on Decedent by Defendants Williamson, Thompson, Becker, Gottula, and Worley; she had a reasonable opportunity inside of Decedent's bedroom to prevent such unlawful conduct by her fellow officers, yet she chose not to act.  As a direct and proximate result of her failure to intervene, her fellow officers continued to violate Decedent's constitutional rights.

103.    On information and belief, Defendant Betts witnessed and had knowledge of the unlawful entry, unlawful seizure, and excessive force used on Decedent by Defendants Williamson, Thompson, Becker, Gottula, Worley, and Stroud; she had a reasonable opportunity inside of Decedent's bedroom to prevent such unlawful conduct by her fellow officers, yet she chose not to act.  As a direct and proximate result of her failure to intervene, her fellow officers continued to violate Decedent's constitutional rights.

104.    As a direct and proximate result of the knowing, willful and grossly negligent acts and omissions by the individual Sheriff's Deputies in declining to intervene to stop the use of excessive force and failure to order the retreat from inside the home upon discovering no exigency inside, Decedent suffered damages, including constitutional injuries, physical injuries, and

tremendous and irreparable emotional and mental harm, and later neurological seizures and death. Plaintiff is entitled to recover nominal, actual, and punitive damages.

## FOR A SIXTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Violation of Decedent's Fourteenth Amendment Rights Against All Individual Defendants)

105.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

106.    At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were deputies with the Berkeley County Sheriff's Office and acted under the color of state law and exercised power possessed by virtue of state law as commission law enforcement officers.   This cause of action is brought against them in their respective individual capacities.

107.    Defendants each had ample time and opportunity to assess the veracity of the swatting call to 911 and to assess the safety of Decedent's home, but deliberately chose not to before entering it.

108.    Further, Defendants had ample opportunity for deliberation and forethought while inside Decedent's home before assaulting him, particularly when watching him and his young son sleeping quietly before storming into the bedroom and initiating their assault on him.

109.    The acts and omissions of the Defendants by entering Decedent's home and violently assaulting him in his bedroom without any legal justification constitutes a conscious-shocking and/or deliberate indifference to the lives and safety of Rashod and his young son, in violation of Rashod Smith's Fourteenth Amendment rights.

110.    Indeed, any reasonable law enforcement officer would have known that to remain inside the quiet home was not only unlawful, but created a substantial risk of serious harm and death to Rashod and his son.

111.    Any reasonable law enforcement officer further would have known that to attempt to detain a sleeping father in his quiet bedroom was not only unlawful, but created a substantial risk of serious injury and death to Rashod and his son.

112.    By the acts and omissions described above, Defendants deprived Rashod Smith of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the U.S. Constitution.

     a.    The right to be free from deprivation of life, liberty, and property without due process of law as secured by the Fourteenth Amendment; and

     b.    The right to be free from unlawful, reckless, deliberately indifferent, and conscious-shocking conduct as secured by the Fourteenth Amendment.

113.    As a direct and proximate result of the conscious shocking and/or deliberately indifferent conduct by Defendants, Rashod Smith's Fourteenth Amendment rights were violated and he suffered damages, including constitutional injuries, physical injuries, and tremendous and irreparable emotional and mental harm, and later neurological seizures and death.   Plaintiff is entitled to recover nominal, actual, and punitive damages.

### FOR A SEVENTH CAUSE OF ACTION
**(Survival Action Against Berkeley County Sheriff's Office)**

114.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

115.    At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were deputies with the Berkeley County Sheriff's Office and acted

under the color of state law and exercised power possessed by virtue of state law as commission law enforcement officers.  This cause of action is brought against their employer, the Berkeley County Sheriff's Office, pursuant to S.C. Code Ann. § 15-78-70.

116.    As a result of the above referenced acts and/or omissions, Decedent Rashod Smith sustained serious physical injuries ultimately causing his wrongful death.

117.    The above-referenced wrongful acts and/or omissions caused Decedent's death and he suffered conscious pain and suffering, personal injuries and trauma prior to and up to his death.

118.    Additionally, upon information and belief, Defendant Berkeley County Sheriff's Office and its employees owed statutory and common law duties to the public in general, and to Rashod Smith in particular, to use due care in fulfilling their law enforcement functions and duties to ensure their conduct conformed to generally accepted police standards and the standards set forth by the Berkeley County Sheriff's Office.  As sworn law enforcement officers at the scene, each of the Sheriff's Deputies had a duty and obligation to prevent their fellow deputies from unlawfully entering Decedent's home, a duty and obligation to order their fellow deputies to exit from Decedent's home upon finding no exigent circumstances inside, and a duty and obligation to order their fellow deputies to cease their use of excessive force on Decedent as soon as it began.

119.    The Sheriff's Deputies failed to use due care and breached these duties as more fully set forth above, including by failing to follow proper law enforcement protocol and procedure; failing to use the appropriate degree of force for the situation; permitting their fellow deputies to unlawfully enter Decedent's home, permitting their fellow deputies by failing to remain inside Decedent's home upon finding no exigent circumstances inside, by failing to order their fellow deputies to cease their use of excessive force on Decedent as soon as it began, and by such other particulars as may be shown at trial.

120.    All of the above referenced acts and/or omissions and/or commissions are in violation of the Berkeley County Sheriff's Office rules and procedures and common laws and statutes of the State of South Carolina, as well as the Defendants' obligations and duties to Decedent Smith.

121.    Pursuant to the South Carolina Survival Act, Plaintiff is entitled to bring all of the above-referenced and foregoing causes of action as the duly appointed Personal Representative of the Estate of Rashod Smith.

122.    Plaintiff alleges that as a result of the above referenced acts, Rashod Smith suffered conscious pain and suffering and mental distress from the injuries he sustained, including injuries that ultimately caused and/or lead to his death, such as conscious pain and suffering and mental distress up to the date of his death, personal injuries and trauma prior to his death, funeral expenses, and other compensatory damages and is entitled to such damages in an amount to be determined by a jury.

123.    All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, and Defendants' obligations and duties to Plaintiff.

124.    As a direct and proximate result of Defendants' wrongful acts and their willful, wanton, reckless, grossly negligent and negligent acts as set out above, Rashod Smith suffered injuries and wrongful death.

125.    Consequently, Plaintiff seeks actual and compensatory damages and such other and further relief this Honorable Court deems just and proper.

## FOR AN EIGHTH CAUSE OF ACTION
### (Wrongful Death Action Against Berkeley County Sheriff's Office)

126.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

127.    At all times relevant hereto, Defendants Williamson, Thompson, Becker, Gottula, Worley, Stroud, and Betts were deputies with the Berkeley County Sheriff's Office and acted under the color of state law and exercised power possessed by virtue of state law as commission law enforcement officers.  This cause of action is brought against their employer, the Berkeley County Sheriff's Office, pursuant to S.C. Code Ann. § 15-78-70.

128.    The above-referenced wrongful acts and/or omissions caused Decedent's death and he suffered conscious pain and suffering, personal injuries and trauma prior to his death.

129.    Additionally, upon information and belief, Defendant Berkeley County Sheriff's Office and its employees owed statutory and common law duties to the public in general, and to Rashod Smith in particular, to use due care in fulfilling their law enforcement functions and duties to ensure their conduct conformed to generally accepted police standards and the standards set forth by the Berkeley County Sheriff's Office.  As sworn law enforcement officers at the scene, each of the Sheriff's Deputies had a duty and obligation to prevent their fellow deputies from unlawfully entering Decedent's home, a duty and obligation to order their fellow deputies to exit from Decedent's home upon finding no exigent circumstances inside, and a duty and obligation to order their fellow deputies to cease their use of excessive force on Decedent as soon as it began.

130.    The Sheriff's Deputies failed to use due care and breached these duties as more fully set forth above, including by failing to follow proper law enforcement protocol and procedure; failing to use the appropriate degree of force for the situation; permitting their fellow deputies to unlawfully enter Decedent's home, permitting their fellow deputies by failing to remain

23

inside Decedent's home upon finding no exigent circumstances inside, by failing to order their fellow deputies to cease their use of excessive force on Decedent as soon as it began, and by such other particulars as may be shown at trial.

131.    All of the above referenced acts and/or omissions and/or commissions are in violation of the Berkeley County Sheriff's Office rules and procedures and common laws and statutes of the State of South Carolina, as well as the Defendants' obligations and duties to Decedent Smith.

132.    Pursuant to the South Carolina Wrongful Death Act, Plaintiff alleges entitlement to all of the above-referenced and foregoing causes of action as survivors and/or as the duly appointed Personal Representative of the Estate of Rashod Smith.

133.    As a direct and proximate result of Defendants' wrongful acts and their willful, wanton, reckless, grossly negligent and negligent acts as set out above, the Decedent's beneficiaries, as represented by Doris Dinkins, Personal Representative of the Estate of Rashod Smith, have suffered injuries, which have caused, and in the future will cause, the beneficiaries to suffer one or more of the following elements of damage as to the survival and wrongful death claims:

       a.  Pecuniary loss;

       b.  Conscious pain and suffering;

       c.  Mental shock and suffering;

       d.  Wounded feelings;

       e.  Grief and sorrow;

       f.  Loss of companionship; and

      g.   Deprivation of use and comfort of Rashod Smith's society, including loss of his experience, knowledge, and judgment in managing the affairs of himself and his beneficiaries.

134.    Due to the wrongful acts and the willful, wanton, reckless, grossly negligent, and negligent acts of Defendant Berkeley County Sheriff's Office as set out above, Plaintiff is entitled to compensation for funeral expenses and other compensatory damages in an amount to be determined by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

    i.    Judgment against all individual defendants, individually and joint and severally;

    ii.    For actual damages, special damages, punitive damages, consequential damages, and all other damages legally compensable in an amount to be determined by the jury to be assessed individually and joint and severally against all individual defendants on all federal causes of action;

    iii.    For actual damages, special damages, consequential damages, and all other damages (excluding punitive damages, exemplary damages and pre-judgment interest) legally compensable in an amount to be determined by the jury, to be assessed against Defendant Berkeley County Sheriff's Office on all state law causes of action;

    iv.    For costs of this action and reasonable attorney's fees; and

    v.    For all such other and further relief this Honorable Court deems just and proper.

**[SIGNATURE PAGE FOLLOWS]**

Respectfully submitted,

**McLEOD LAW GROUP, LLC**

BY: <u>s/ Colin V. Ram</u>
W. Mullins McLeod, Jr., Bar No.  14148
Colin V. Ram, Bar No. 103260
P.O. Box 21624
Charleston, SC 29413
843-277-6655

*Attorney for Plaintiff*

<u>November 16, 2021</u>
Charleston, South Carolina